LOWE v ESTATE MOTORS LIMITED

Docket Nos. 77914, 77926. Argued January 15, 1987 (Calendar No. 18). Decided August 4, 1987. Rehearing denied 429 Mich 1207.

Ethel Lowe, by her conservator, Frank F. Gazley, brought an action in the Oakland Circuit Court against Estate Motors Limited, Mercedes-Benz of North America, Inc., and Newark Auto Products, alleging negligent design and breach of implied warranty with respect to the door and door-locking mechanism of an automobile in which she was seriously injured and a floor mat which she alleged had wedged under the brake pedal of the automobile and contributed to the driver's loss of control. Mercedes-Benz asserted an affirmative defense of comparative negligence on the ground that the plaintiff failed to use an available seat belt. The court, Steven N. Andrews, J., found that where there is evidence of the availability of seat belts and of a causal relationship between the injuries sustained and the failure to use seat belts it would be proper to submit the issue of comparative negligence to the jury, and that evidence of seat belts could be used in defense of the crashworthiness of the design of the automobile as a whole. The Court of Appeals, V. J. Brennan, P.J., and Cynar, J. (Simon, J., dissenting), reversed, holding that the failure to use a seat restraint was not a deviation from the general duty to exercise ordinary care as a matter of law and concluded that the plaintiff's failure to wear a seat belt was not admissible as evidence of comparative negligence (Docket No. 73531). The defendants appeal.

In opinions by Chief Justice Riley, joined by Justices Brickley and Cavanagh, and by Justice Boyle, the Supreme Court *held:*

Evidence of the existence of and failure to use seat belts may be admissible in a products liability action to support an

References

Am Jur 2d, Automobiles and Highway Traffic §§ 717 *et seq.*

Am Jur 2d, Products Liability §§ 370, 506, 559, 560, 804, 814, 927, 930, 963.

Products liability: Modern cases determining whether product is defectively designed. 96 ALR3d 22.

Automobile occupant's failure to use seat belt as contributory negligence. 15 ALR3d 1428.

affirmative defense of comparative negligence; where the issue of the crashworthiness of a vehicle is raised as an issue of liability, evidence of the availability of a seat-restraint system may be admitted for the purpose of defending the design of the vehicle as a whole, entirely independent of the comparative negligence defense.

Chief Justice RILEY, joined by Justices BRICKLEY and CAVANAGH, stated:

1. In all products liability actions involving injury arising from the use of an automobile where the affirmative defense of comparative negligence has been raised, the trier of fact should not be precluded, as a matter of law, from considering the failure of the injured party to use an available seat belt in determining whether the plaintiff exercised reasonable care under the circumstances. Whether failure to use a seat belt amounts to comparative negligence is a question of fact appropriately within the province of the jury. While every person has an obligation to exercise reasonable care for his own safety, reasonable minds may differ regarding the application of the reasonableness of the risk of harm: The burden of buckling an available seat belt may, under the facts of a particular case, be found by a jury to be less than the likelihood of injury when multiplied by its accompanying severity. Thus, where competent evidence is proffered to establish that the failure to use an available and operational seat belt contributed to the plaintiff's damages, the issue of comparative negligence, including the accompanying issue of causation, should be submitted to the jury.

2. In crashworthiness cases, in determining whether the design of a vehicle is defective, the vehicle must be considered as an integrated whole. The jury should consider the vehicle's overall design, including safety features such as a seat-restraint system and other relevant factors, in determining its crashworthiness. The plaintiff's conduct and its causal relation to the injuries is not relevant to the issue of the vehicle's design. While a plaintiff must establish both that the vehicle was defective in design and that the defect proximately caused or enhanced the injuries, the elements are entirely distinct. In considering whether the insufficient crashworthiness of a vehicle was a proximate cause of the plaintiff's injuries, the focus is upon the vehicle's design and its relation to the injuries. Whether and to what extent the plaintiff's failure to use an available seat restraint proximately caused injury properly may be considered only within the context of determining the issue of comparative negligence and then only after consideration of the issue of substantive negligence.

3. Legislation requiring use of seat belts does not apply in

this case because the accident occurred prior to the effective date of the statute, the requirement applies to front-seat passengers and the plaintiff was seated in the rear of the vehicle, and the accident occurred without the boundaries of Michigan. The Court of Appeals relied upon a decision of that Court which was inconsistent with decisions of the Supreme Court and generally recognized principles of negligence law.

4. The decision in this case should be given limited retroactive effect, applying to cases tried after the date of decision and to those cases pending on appeal in which issues concerning the admissibility of seat belt evidence have been properly preserved.

Justice BOYLE, concurring, stated that evidence of a plaintiff's failure to use seat belts should be admitted to the extent it would pertain to the question of the plaintiff's comparative fault, and that evidence of the presence of seat belts should be admitted in a defense of the crashworthiness of a vehicle. However, the questions of the proper relation of a plaintiff's failure to wear a seat belt and whether an alleged design defect was a factual or proximate cause of a plaintiff's injuries should not be reached in the context of a ruling on a motion in limine and in the absence of a full trial record.

Reversed and remanded.

Justice ARCHER, dissenting, stated that evidence of failure to use a seat belt should not be admitted as a defense in a products liability action where the crashworthiness of a vehicle is at issue. Case law involving automobile accidents has consistently held such evidence inadmissible, including cases decided following the adoption of the doctrine of comparative negligence. Retention of the rule is particularly important in products liability actions where the types of conduct being considered are usually varied. Under the majority's approach, a trial judge or a jury may reduce a plaintiff's recovery by any percentage up to one hundred percent where a rear-seat passenger is found not to have worn a seat belt, while the Legislature limited such a reduction to no more than five percent. Given prior Michigan case law and legislative enactments, the result is unfair and inequitable. At the time of the accident in this case, absolutely no duty to wear a seat belt was declared or such an issue of negligence recognized at common law or by statute.

Justice LEVIN, joined by Justice ARCHER, writing separately, stated:

1. The question whether 1985 PA 1 should be taken into

consideration in deciding the issues of comparative negligence and reduction of damages and the separate question whether a decision of the Supreme Court that changes a common-law rule should be given retroactive or prospective effect have not been briefed or argued. Neither should be decided without briefing and advocacy.

a. It is one thing to say that Act 1 will not be applied in the instant case because no issue concerning the present or future effect of Act 1 has been raised by the parties in this Court. It is quite another to say, as does the lead opinion, that Act 1 is not applicable because the accident occurred before the effective date of Act 1 and because Act 1 by its terms does not apply to a rear-seat passenger. The latter statements in effect say that the enactment of Act 1 does not impede this Court from changing the common-law rule applicable to the period before enactment of Act 1.

b. The question of the import of Act 1 is addressed in this opinion only because the lead opinion addresses the question. The discussion of the question in the lead opinion cannot be justified on the basis that another opinion addresses the question.

c. An option open to a majority, or a plurality with the vote of dissenting or concurring justices, is to order further briefing and argument so that the question not briefed can be decided after adversary presentation. That is the course that the Court should have adopted in this case.

2. Because the lead opinion appears to express a view regarding the import of Act 1, and because of the importance of this question—it potentially affects approximately one-third of the injury actions—disagreement with the analysis of the lead opinion on this question is expressed.

a. Although Act 1 was not by its terms effective until July 1, 1985, it codified the common-law rule, established by the Court of Appeals, that damages may not be reduced for failure to wear a seat belt with a "narrow exception" permitting reduction of a damage award by not more than five percent for failure of a front-seat occupant to wear a seat belt.

b. Where the Legislature essentially accepts the common-law rule, a proper respect for legislative supremacy on substantive issues requires that the judiciary ordinarily defer to the legislative decision to enter the field, abide by the legislative solution, and refrain from further and belated refinement of the substantive law.

c. Once the Legislature has acted, essentially accepting a well-established, uncontradicted common-law rule, it is not

appropriate for the Supreme Court to retroactively change the common law, especially where the Court previously had declined review.

3. Evidence concerning a seat-restraint system may be considered by the trier of fact in determining whether a motor vehicle was defective in design where crashworthiness is asserted as a theory of liability.

Justice GRIFFIN took no part in the decision of this case.

147 Mich App 523; 382 NW2d 811 (1985) reversed.

1. PRODUCTS LIABILITY — AUTOMOBILES — COMPARATIVE NEGLIGENCE — SEAT BELTS — CRASHWORTHINESS.

Evidence of the existence of and failure to use seat belts may be admissible in a products liability action to support an affirmative defense of comparative negligence; where the issue of the crashworthiness of a vehicle is raised as an issue of liability, evidence of the availability of a seat-restraint system may be admitted for the purpose of defending the design of the vehicle as a whole, entirely independently of the comparative negligence defense.

2. PRODUCTS LIABILITY — AUTOMOBILES — COMPARATIVE NEGLIGENCE — SEAT BELTS.

In all products liability actions involving injury arising from the use of an automobile where the affirmative defense of comparative negligence has been raised, the trier of fact should not be precluded, as a matter of law, from considering the failure of the injured party to use an available seat belt in determining whether the plaintiff exercised reasonable care under the circumstances; whether failure to use a seat belt amounts to comparative negligence is a question of fact appropriately within the province of the jury.

3. PRODUCTS LIABILITY — AUTOMOBILES — SEAT BELTS — CRASHWORTHINESS.

In determining whether the design of an automobile is defective, the vehicle must be considered as an integrated whole; a jury should consider a vehicle's overall design, including safety features such as a seat-restraint system in determining its crashworthiness.

*Gerald Tuchow Law Offices, P.C.* (by *Stephen J. Trahey*), for the plaintiff.

*Fitzgerald, Young, Peters, Dakmak & Bruno* (by *Neill T. Peters, Stuart J. Snider,* and *Robert L.*

*Sharbaugh*) and *Allan G. Freund* and *Jeffrey C. Poll* for defendant Mercedes-Benz of North America, Inc.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Mark D. Willmarth, Susan Healy Zitterman,* and *Anthony G. Arnone*), for defendant Newark Auto Products.

Amici Curiae:

*Miller, Canfield, Paddock & Stone* (by *Wolfgang Hoppe* and *Stephen J. Ott*) and *Mershon, Sawyer, Johnston, Dunwody & Cole* (by *Edward T. O'Donnell*); (*William H. Crabtree,* General Counsel, and *Edward P. Good,* Senior Attorney, of counsel), for the Motor Vehicle Manufacturers Association of the United States, Inc., and the Product Liability Advisory Council, Inc.

Riley, C.J. In this automobile products liability action, we review the Court of Appeals reversal of the trial court's interlocutory denial of plaintiff's motion to strike an affirmative defense pled by defendants, and a motion in limine to preclude the introduction of any evidence concerning plaintiff's failure to use an available seat belt. The issue we consider is limited to the admissibility of evidence concerning the existence of and failure to use seat belts for the purpose of (1) attempting to establish the affirmative defense of comparative negligence, and (2) defending the design of the vehicle in cases in which the "crashworthiness" doctrine is asserted as a theory of liability. We hold that the introduction of evidence concerning the existence of and failure to use seat belts is not to be treated differently than evidence concerning the existence of and failure to use safety devices generally, and,

therefore, that such evidence may be admissible for either purpose provided a proper foundation is established. For purposes of comparative negligence, applicable in all products liability cases by legislative act,[1] evidence of a plaintiff's failure to use an available seat belt may raise a factual issue to be submitted for jury consideration. In crash-worthiness cases evidence of restraint systems is relevant to whether the vehicle as a whole was defective in design.

### FACTS AND PROCEDURES

On April 18, 1979, plaintiff was a passenger in the rear seat of a 1979 Mercedes 300D owned and driven by her son, third-party defendant Rayburnell Neighbors.[2] While traveling southbound on I-75 near Lima, Ohio, Mr. Neighbors lost control of the vehicle when approaching a construction zone. The vehicle sideswiped a construction truck parked in the right lane, traversed the southbound lanes, and struck a concrete dividing barrier. At some point after the initial impact, the right rear door opened, and plaintiff was ejected from the vehicle, sustaining multiple injuries.

Plaintiff commenced this action asserting negligent design and breach of implied warranty theories of liability.[3] She alleged that the cause of the accident was attributable to a defectively designed

---

[1] MCL 600.2949(1); MSA 27A.2949(1). See In re Certified Question, Karl v Bryant Air Conditioning Co, 416 Mich 558; 331 NW2d 456 (1982).

[2] Mr. Neighbors' status as a third-party defendant is currently somewhat unclear. The record reflects that Mr. Neighbors reached a settlement with plaintiff and thereby was released. See MCL 600.2925d; MSA 27A.2925(4). The propriety of Mr. Neighbors' release seems to have been the subject of some motion procedure appearing not to have been concluded.

[3] For an exposition of these substantive theories of products liability regarding design defects as opposed to manufacturing defects, see Prentis v Yale Mfg Co, 421 Mich 670; 365 NW2d 176 (1984).

floor mat which had wedged under the brake
pedal, contributing to the driver's loss of control of
the automobile, and further that her injuries were
also caused by a defectively designed door and
door-locking mechanism which rendered the auto-
mobile uncrashworthy.[4] Defendants include Mer-
cedes-Benz of North America (MBNA), Estate Mo-
tors Limited, a local distributor from which the
automobile was purchased, and Newark Auto
Products, manufacturer of the floor mat.

Defendant MBNA asserted an affirmative defense
of comparative negligence on the basis of the
plaintiff's failure to use the available three-point
seat restraint provided for rear seat passengers.[5]
Plaintiff moved to strike that affirmative defense
and to exclude at trial the admission of any evi-
dence concerning that safety device, and her fail-
ure to use it. In support of her motions, plaintiff
argued that, as a matter of law, her failure to
wear a seat belt did not constitute negligence
because plaintiff "owed no duty" to defendant to
wear a seat belt, that her failure to wear a seat
belt did not contribute to the cause of the accident,
and that it did not violate her duty to avoid

---

[4] The term "crashworthiness" as used in this opinion relates to the
protection that a motor vehicle affords its passengers against injuries
resulting from accidents, that is, injuries resulting from the so-called
"second collisions" which occur after the initial impact or collision.
Second-collision injuries have been described as "enhanced injuries."
See *Larsen v General Motors Corp*, 391 F2d 495 (CA 8, 1968). See also
Note, *Torts—Strict liability—Automobile manufacturer liable for de-
fective design that enhanced injury after initial accident*, 24 Vand L R
862 (1971).

For a statutory definition of the term "crashworthiness," see the
Motor Vehicle Information and Cost Savings Act, 15 USC 1901(14).

[5] MBNA affirmatively pleaded the following:

[T]he injuries suffered by Plaintiff in the alleged accident
were the proximate result of Plaintiff's own negligence, includ-
ing, but not limited to the failure of Plaintiff to wear the seat
belt or other safety restraint provided with the subject vehicle
by MBNA.

consequences or minimize damages. Plaintiff relied upon the authority of *Selmo v Baratono,* 28 Mich App 217; 184 NW2d 367 (1970), and *Romankewiz v Black,* 16 Mich App 119; 167 NW2d 606 (1969).

The trial court denied both motions on August 1, 1983. The court reasoned that where there is evidence of availability of seat belts and of a causal relationship between the injuries sustained and the failure to use seat belts, it would be proper to submit the issue of comparative negligence to the jury.[6] Furthermore, the court ruled that MBNA could introduce seat belt evidence in its defense of the crashworthiness design of the automobile as a whole. Finally, while unclear, the court seems to have ruled that plaintiff could be precluded from any recovery against MBNA if her failure to use the available seat restraint could be shown to be *the* proximate cause of her enhanced injuries, rather than the product's lack of fitness.[7]

Plaintiff appealed in the Court of Appeals which reversed in a two-to-one decision. *Lowe v Estate Motors,* 147 Mich App 523; 382 NW2d 811 (1985). The Court of Appeals, relying upon *Romankewiz, supra,* and the extension of the *Romankewiz* rationale in *Schmitzer v Misener-Bennett Ford,*

---

[6] The trial court declined to apply *Selmo* and *Romankewiz,* noting that both cases were decided prior to the judicial abrogation of the defense of contributory negligence as a total bar to recovery. The court opined that, consistent with the principles of pure comparative negligence adopted in *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), the focus is on the plaintiff's conduct as it relates to her injuries, rather than being limited to the causality of the accident itself. Further, the court relied upon a comparative negligence treatise by Professor Schwartz, which was cited with approval in *Placek,* to support its ruling that in comparative negligence jurisdictions a plaintiff's failure to use an available seat belt and the extent to which that failure contributed to the plaintiff's injuries should be submitted for jury consideration.

[7] The basis for that portion of the trial court's ruling is unclear. While the record reflects some reference to the defense of "misuse," MBNA seeks to support that ruling within the context of the element of causation without reference to that defense.

135 Mich App 350; 354 NW2d 336 (1984), held that the failure to use a seat restraint was not, as a matter of law, a deviation from the general duty to exercise ordinary care, and concluded, therefore, that plaintiff's failure to wear a seat belt was not admissible as evidence of comparative negligence. The majority did not address the admissibility of such evidence with respect to the issue of crashworthiness design, but, nonetheless, reversed the trial court's order denying plaintiff's motions in toto. The dissenting judge was of the opinion that the comparative negligence defense was primarily a factual matter, the resolution of which, consistent with general negligence principles, is appropriately within the province of the jury.

We granted the defendants' applications for leave to appeal. 425 Mich 872 (1986).

I

This interlocutory appeal involves relatively limited questions concerning the permissible admissibility of seat belt evidence within the context of the substantive issues implicated in this automobile products liability action. We are required to decide the admissibility of such evidence for two entirely independent purposes: first, to attempt to establish the partial defense of comparative negligence; second, to defend the crashworthiness design of the vehicle. All relevant evidence is generally admissible, MRE 402. Our decision in this case, therefore, requires some discussion of the law of comparative negligence and products liability to the extent that it necessarily relates to the viability of the defense plaintiff sought to strike and the evidence plaintiff sought to exclude.

Thus, the resolution of the issues presented depends upon (1) whether failure to use a seat belt

may properly be held, as a matter of law, not to constitute a deviation from the general duty to exercise reasonable care for one's own safety, under any circumstances and in all cases; and (2) whether seat-restraint evidence is irrelevant to an automobile's safety design. Unless those issues may be resolved in the affirmative, the evidence in question may not properly be excluded and withheld from the jury's consideration, consistent with the applicable common-law principles to which we are bound.

On the basis of our obligation to analyze and decide the issues presented by applying the common-law principles of negligence developed in our prior decisions in a consistent manner, we are compelled to reverse the decision of the Court of Appeals. Contrary to the assertions in Justice Archer's dissent, and unlike Justice Archer, we do not, however, presume to decide whether failure to use a seat belt is or is not a deviation from the general and universal duty of an automobile passenger to exercise ordinary care for his own safety. We hold, rather, that because reasonable minds might differ, that question may not be withheld from jury decision.

With regard to the second issue, which is presented entirely independent of the first, we conclude that, because an automobile's seat belt restraint system is directly relevant to that vehicle's safety design, such evidence may not be excluded with respect to the limited issue of the vehicle's crashworthiness design. We delimitate, however, the permissible scope of such evidence for this latter purpose.

II

The doctrinal origin of the judicially created

rule disallowing evidence of a plaintiff's failure to use a seat belt in this jurisdiction may be traced to the Court of Appeals decision in *Romankewiz, supra*. *Romankewiz* was an ordinary automobile negligence case not involving modern theories of products liability which was decided before the adoption of pure comparative negligence by this Court in *Placek v Sterling Heights*, 405 Mich 638; 275 NW2d 511 (1979). In *Romankewiz*, the Court rejected claims that a plaintiff's failure to use a seat belt could amount to contributory negligence as a total bar to recovery or a failure to mitigate damages.

With regard to the issue of contributory negligence, the Court held "that as a matter of law, [plaintiff] had no duty to wear a seat belt," and that "plaintiff's failure to fasten his seat belt was not such negligence as to contribute to the cause of the accident [because] [u]nbuckled plaintiffs do not *cause* accidents." *Romankewiz, supra*, 126 (emphasis in original). The reasons given in support of its holding in this regard were as follow. First, the Court noted that the then-recently enacted statute requiring automobiles to be equipped with seat belts did not obligate individuals to use them.[8] Second, the Court mentioned "statistics demonstrating the general non-use of seat belts, indicating that only 15% of the nation's drivers 'buckle up' [and] that belts can [actually] exacerbate injuries." *Id.*, 124. Finally, the Court reasoned that the failure to buckle a seat belt could not amount to "a failure to exercise the ordinary care . . . *under the circumstances* . . . [because] until one has, or should have, notice of another's negligence, he is not required to anticipate it. On the contrary, he is entitled to assume that others will use due care for

[8] MCL 257.710b; MSA 9.2410(2) required automobiles manufactured after January 1, 1965, to be equipped with seat belts.

his safety and their own." *Romankewiz, supra,* 125 (emphasis in original).

The Court disposed of the issue of avoidable consequences or mitigation of damages by "a very simple bit of logic: if there is no duty to buckle a seat belt, failure to do so cannot be held a breach of duty to avoid consequences or minimize damages." *Id.,* 126. The Court held: "Accordingly, as a matter of law, . . . failure to use a seat belt is not appropriate as a damage-mitigating factor or under the doctrine of avoidable consequences."[9] *Id.,* 127. In closing, the Court said "it is for the legislature . . . to prescribe any required use" of seat belts. *Id.*

In *Schmitzer, supra,* the Court of Appeals considered whether a plaintiff's failure to use a seat belt could be introduced as evidence of comparative negligence as a partial bar to recovery in light of the adoption of the comparative fault doctrine in *Placek, supra.* The Court reasoned that whether a plaintiff's recovery could be reduced to the extent that his own negligence caused or increased the severity of his *injury,* as opposed to the *accident* itself, was unclear. In any event, the Court held, relying on *Romankewiz,* that no duty to wear a seat belt existed, as a matter of law, and therefore the failure to use an available seat belt could not constitute a breach of the duty to use ordinary care.[10] Referring to that duty, the Court concluded:

---

[9] Cf. *Spier v Barker,* 35 NY2d 444; 363 NYS2d 916; 323 NE2d 164 (1974). In *Spier,* the New York Court of Appeals held that, while failure to use a seat belt could not constitute contributory negligence as a total bar to recovery, a plaintiff's failure to use an available seat belt *could* constitute a breach of the duty to avoid consequences or mitigate damages, and, therefore, that such evidence could not be precluded from jury consideration.

[10] The *Schmitzer* Court reasoned that where there is no duty there can be no breach. The Court's holding that the failure to use an available seat belt could not constitute a violation of the duty to use ordinary care was also premised upon the proposition that "plaintiff

[I]mposition of such a duty is an act more appro-
priately performed by the Legislature. The Legisla-
ture is better equipped to consider the various
issues raised by a law mandating seat-belt use,
e.g., the majority of the population's disinclination
to wearing seat belts, the contradictory studies
regarding the efficacy of seat belts as safety de-
vices, and the collateral problems associated with
other types of safety devices. [*Schmitzer,* 359.]

The Court of Appeals majority in the present
case found *Schmitzer* to be controlling. As noted in
the dissenting opinion of Judge Simon, however,
the courts in other jurisdictions have reached
contrary conclusions when considering similar is-
sues.[11] At present, the majority view in compara-
tive negligence jurisdictions in which the issue has
been addressed requires allowing the jury to con-
sider the seat belt nonuse defense. See Note, *The
seat belt defense: Must the reasonable man wear a
seat belt?* 50 Mo L R 968, 976, n 83, cases cited
therein, and accompanying text (1985).

In *Ins Co of North America v Pasakarnis,* 451 So
2d 447, 451 (Fla, 1984), for example, the Florida
Supreme Court rejected the reasoning adopted in
*Schmitzer.* The court first addressed the assertion
that whether failure to use a seat belt could
constitute comparative negligence was more appro-
priate for legislative consideration. Noting that

---

[need not] anticipate negligent acts of a defendant." 135 Mich App
359. The Court did not attempt to reconcile that proposition with the
decisions of this Court which have rejected such a proposition when
considering the liability of defendants. See, e.g., *McMillan v. State
Hwy Comm,* 426 Mich 46; 393 NW2d 332 (1986); *Moning v Alfono,* 400
Mich 425; 254 NW2d 759 (1977).

[11] See, e.g., Anno: *Nonuse of automobile seatbelts as evidence of
comparative negligence,* 95 ALR3d 239; Anno: *Nonuse of seat belt as
failure to mitigate damages,* 80 ALR3d 1033. See also Werber, *A
multi-disciplinary approach to seat belt issues,* 29 Clev St L R 217
(1980); Comment, *Self-protective safety devices: An economic analysis,*
40 U Chi L R 421 (1973); Note, *The seat belt defense: Must the
reasonable man wear a seat belt?* 50 Mo L R 968 (1985).

tort law is peculiarly nonstatutory and that the court had not hesitated in the past in overturning unsound precedent in the area of tort law, the court viewed the issue as most appropriate for judicial decision, and concluded that "[t]o abstain from acting responsibly in the present case on the basis of legislative deference would be to consciously ignore a limited area where decisions of lower courts of this state have created an illogical exception to the doctrine of comparative negligence . . . ." *Id.*

Discussing the doctrine of pure comparative fault which it had judicially adopted in *Hoffman v Jones,* 280 So 2d 431, 453 (Fla, 1973), the court concluded that the failure to wear an available seat belt could be a pertinent factor appropriate for consideration by a jury in deciding whether the plaintiff exercised due care for his own safety. *Pasakarnis, supra,* 453. In reaching that conclusion, the court flatly rejected the contention that seat belt effectiveness as a safety precaution is too "speculative," stating that the evidence of seat belt effectiveness "in reducing deaths and injury severity is substantial and unequivocal." *Id.*

Likewise, the court rejected the assertion that automobile accidents are unforeseeable and, therefore, that "reasonable care under the circumstances" could not, as a matter of law, require that they be anticipated. In this regard, the court discussed its earlier decision in *Ford Motor Co v Evancho,* 327 So 2d 201 (Fla, 1976), adopting the "crashworthiness" doctrine and rationale of *Larsen v General Motors Corp,* 391 F2d 495 (CA 8, 1968), in which it "expressly acknowledged [that] automobile collisions are foreseeable as are the so-called 'second collisions' with the interior of the automobile." *Pasakarnis, supra,* 453. The court

quoted the following passage from *Evancho, supra,*
204:

> "Automobiles are made for use on the roads and
> highways in transporting persons and cargo to and
> from various points. This intended use cannot be
> carried out without encountering in varying de-
> grees the statistically proved hazard of injury-pro-
> ducing impacts of various types. . . .
> ". . . While automobiles are not made for the
> purpose of colliding with each other, a frequent
> and inevitable contingency of normal automobile
> use will result in collisions and injury-producing
> impacts."

Following the decision of the New York Court of
Appeals in *Spier v Barker,* 35 NY2d 444; 363
NYS2d 916; 323 NE2d 164 (1974),[12] the court held:

> Nonuse of the seat belt may or may not amount
> to a failure to use reasonable care on the part of
> the plaintiff. Whether it does depends on the par-
> ticular circumstances of the case. . . . If there is
> competent evidence to prove that the failure to use
> an available and operational seat belt produced or
> contributed substantially to producing at least a
> portion of plaintiff's damages, then the jury should
> be permitted to consider this factor, along with all
> other facts in evidence, in deciding whether the
> damages for which defendant may otherwise be
> liable should be reduced. [*Pasakarnis, supra,* 454.]

Thus, the court concluded that failure to use a
seat belt may not be deemed negligent or nonnegli-
gent as a matter of law, but that it is "necessarily

[12] When *Spier* was decided, contributory negligence as a total bar to
recovery had not yet been replaced with the doctrine of comparative
fault. The court premised its decision upon the doctrine of avoidable
consequences, which it reasoned was similar to the doctrine of mitiga-
tion of damages. Whether failure to use an available seat belt consti-
tuted a breach of the duty to avoid consequences or mitigate damages
was deemed a question for the jury.

a matter to be determined in each instance by the jury" in all cases in which there is "competent evidence to show that the plaintiff's failure to use an available seat belt bore a causal relation to the plaintiff's injuries." *Id.,* 450.

### III

Like the Florida court in *Pasakarnis,* we are convinced that the reasons expressed by the Court of Appeals do not support disallowing the trier of fact from considering a failure to use a seat belt for the purpose of the affirmative defense of comparative negligence. Consistent with the underlying principles of the comparative fault doctrine adopted by this Court in *Placek, supra,* and made applicable in all products liability actions by legislative act,[13] and with the general principles of negligence law acknowledged and relied upon by this Court in, among other cases, *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977), *Hardy v Monsanto Enviro-Chem Systems, Inc,* 414 Mich 29; 323 NW2d 270 (1982), *Prentis v Yale Mfg Co,* 421 Mich 670; 365 NW2d 176 (1984), and *McMillan v State Hwy Comm,* 426 Mich 46; 393 NW2d 332 (1986), the trier of fact may not be precluded, as a matter of law, from considering a failure to use a seat belt to determine whether the plaintiff exercised reasonable care under the circumstances for his own safety.

The general standard of care for purposes of comparative negligence, while differing in perspective,[14] is theoretically indistinguishable from the applicable standard for determining liability in

---

[13] MCL 600.2949(1); MSA 27A.2949(1).

[14] For purposes of comparative negligence, the perspective differs in that it is the plaintiff's conduct in relation to his own injuries which is at issue.

common-law negligence: the standard of conduct to which one must conform for his own protection is that of "a reasonable [person] under like circumstances."[15] Because the nature of the objective "reasonable person" standard is indistinguishable, general negligence principles are equally applicable, and the law-fact distinction is identical.

The "no duty" formulation relied upon by the Court of Appeals in the present case is similar to the "no duty" analyses we rejected in *Moning, supra,* and more recently in *McMillan, supra.* That formulation was developed by combining the separate issues of duty, proximate cause, and the general and specific standards of care, and it substantially obscures the appropriate functions of the court and the jury. It is, of course, indisputable that, pursuant to the law of comparative negligence, every person has an obligation to exercise reasonable care for his own safety. As was thoroughly discussed in *Moning, supra,* whether the particular conduct in question in any given case would be a violation of that obligation "is not a question of duty, but of the specific standard of care: the reasonableness of the risk of harm thereby created." *Id.,* 433.

Discussing the "reasonableness of the risk of harm" and the appropriate functions of the court and jury in making that evaluation, the *Moning* Court said, quoting 2 Harper & James, Torts, § 16.5, pp 912-913:

> The trier of fact decides whether reasonable precautions have been taken and thereby establishes the specific standard of care:
> "The common formula for the negligence standard is the conduct of a reasonable man under like

15 Restatement Torts, 2d, § 464. See *Hardy v Monsanto Enviro-Chem Systems, Inc,* 414 Mich 29; 323 NW2d 270 (1982).

circumstances. In applying this standard under the instructions of the court, the jury normally is expected to determine what the general standard of conduct would require in the particular case, and so to set a particular standard of its own within the general one. This function is commonly said to be one of the determination of a question of fact, and not of law. . . ." 2 Restatement [Torts, 2d], § 328C, comment on clause (b). [*Moning,* 449, n 27.]

Concerning the "reasonableness" evaluation, the Court further explained:

The reasonableness of the risk depends on whether its magnitude is outweighed by its utility. The Restatement provides: "Where an act is one which a reasonable man would recognize as involving a risk of harm . . . , the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done." 2 Restatement, *supra,* § 291. [*Id.,* 450.]

The Court reasoned that the specific standard of care, "whether [the actor's] conduct in the particular case is below the general standard of care, including . . . whether in the particular case the risk of harm created by the [actor's] conduct is or is not reasonable" is appropriately within the province of the jury, "unless . . . all reasonable persons would agree or there is an overriding . . . public policy." *Id.,* 438. The Court offered the following justification and rationale as underlying that general principle of negligence law:

The preference for jury resolution of the issue of negligence is . . . rooted in the belief that the

jury's judgment of what is reasonable under the circumstances of a particular case is more likely than the judicial judgment to represent the *community's* [emphasis added] judgment of how reasonable persons would conduct themselves.

. . . Until the *community* judgment is made so to appear, the principle that doubtful questions regarding the application of the standard of care should be decided by reference to the *community* [emphasis added] judgment requires jury submission of the question so in doubt. [*Id.*, 435-436.]

*Moning* involved the potential liability of a manufacturer, wholesaler, and retailer of slingshots for the alleged negligent marketing of slingshots directly to children. The plaintiff in *Moning* was injured when a third-party minor accidentally hit him in the eye with a projectile fired from such a slingshot. The Court held that whether selling slingshots directly to minors constituted negligence (e.g., created an unreasonable risk of harm, thereby violating the duty to conform to the general standard of reasonable care) was appropriately to be decided by a jury.

In *McMillan, supra,* 52-53, we rejected the assertion that a utility company can breach "no duty," as a matter of law, in failing to erect a utility pole in "anticipation of the possibility that an automobile, leaving the roadway out of control, would collide with it." The opinion of the Court stated that the specific standard of care, as well as the issue of proximate cause, depended " 'in part on foreseeability—whether it is foreseeable that the actor's conduct may create a risk of harm . . . and whether the result of that conduct and intervening causes were foreseeable.' " *Id.,* 61-62 (quoting *Moning, supra,* 439). The Court expressly disagreed with the contention that automobile collisions with utility poles located entirely

outside of the traveled portions of highways were unforeseeable. See, *id.,* 62, and n 6. The Court likewise rejected the contention that no jury question could exist because utility poles so located do not *cause* accidents.

Applying the principle articulated in *Moning,* that "[w]hen reasonable minds may differ regarding the application of the reasonableness of the risk of harm, the question is best left for the jury," the *McMillan* Court, *supra,* 63, reversed the decision of the Court of Appeals which had affirmed the trial court's grant of summary judgment, and overruled *Dawson v Postal Telegraph Cable Co,* 265 Mich 139; 251 NW 352 (1933), and *Cramer v Detroit Edison Co,* 296 Mich 662; 296 NW 831 (1941), to the extent that those decisions had been judicially interpreted as having defined the specific standard of care, as a matter of law, to be applied in all similar cases. Reversing and remanding that case for trial, the Court concluded that reasonable minds might differ regarding whether the utility of illuminating the highway outweighed the risk of harm created by the placement of a utility pole approximately three feet from the traveled portion of the road. Likewise, the Court was not persuaded that considerations of public policy required adopting a particular view to be applied in all similar cases.[16]

The "no duty" formulation adopted in *Romankewiz, supra,* may have been a product of the all or nothing analyses surrounding the abrogated doctrine of contributory negligence as a total bar to recovery. Avoiding the potentially harsh and inequitable consequences of that complete defense

---

[16] Judicial attempts to define the specific standard of care to be applied in all similar cases have been criticized by legal writers and have not withstood the test of time. See, e.g., Prosser & Keeton, Torts (5th ed), § 35, pp 217-219.

may have been an appropriate concern directing the Court's decision in that case. It was precisely that concern which led this Court to judicially adopt the doctrine of pure comparative fault in *Placek, supra,* to move toward "accomplish[ing] the goal of a fair system of apportionment of damages." *Id.,* 660.

In contrast to the abrogated defense of contributory negligence, comparative negligence never allows an otherwise liable defendant to entirely "avoid" liability and thus "escape" the duty of due care. *Hardy, supra,* 40. That significant difference renders the creation of aberrational exceptions inherently inconsistent with general negligence principles unwarranted.

The admissibility of evidence concerning a plaintiff's failure to use a seat belt for the purpose of attempting to establish the partial defense of comparative negligence does not concern the question of duty. The common-law duty issue is limited to whether the plaintiff was under any obligation to exercise reasonable care for her own safety. It cannot be seriously contended that automobile passengers are under no obligation whatsoever to exercise due care for their own safety because accidents are unforeseeable. The speciousness of such a contention is particularly reflected in the present case in which one of plaintiff's theories of liability is indeed premised upon the foreseeability of automobile accidents. Whether failure to use a seat belt under the circumstances of the instant case constitutes a deviation from that legal duty, rather, as discussed above, concerns the specific standard of care, which, consistent with our prior decisions, may not be withheld from the jury unless all reasonable minds could not differ, or some ascertainable public policy consideration re-

quires protecting, and therefore encouraging, that conduct under any circumstances.

## IV

We are persuaded that the decision of the Court of Appeals is inconsistent with the foregoing principles. The rationale forming the basis of that decision—that one need not anticipate the negligence of others, even if foreseeable, that a high percentage of automobile occupants do not use seat belts, that seat belt effectiveness is too speculative, and that the imposition of a duty to use them for purposes of the common-law doctrine of comparative negligence is more appropriate for legislative consideration—is flawed and inconsistent with modern and traditional principles of negligence law. That analysis, furthermore, substantially obscures the appropriate functions of the court and the jury.

While evidence of the high percentage of failures to use seat belts is relevant to the issue of reasonableness, such evidence does not support withholding the issue from the jury. The assertion that certain conduct is customary, or that a majority engage in the conduct in question, does not in and of itself make such conduct reasonable. The determinative evaluation requires contemplating the fictitious objective "reasonable person," not the subjective "average person." For customary conduct to be reasonable under the circumstances, it must be a product of what has been described "learned reason."[17] That is, as first articulated by Judge Learned Hand in *United States v Carroll Towing Co,* 159 F2d 169, 173 (CA 2, 1947), and consistently applied by the courts of this jurisdiction as reflected in *Moning, supra,* such conduct

[17] Prosser & Keeton, Torts (5th ed), § 33, p 195.

may be found to be unreasonable if the magnitude of the risk of harm created (probability of harm multiplied by the gravity of that harm) is greater than the burden of adequate precautions or the utility of the conduct in question.

In light of the uniform applicability of that formula, whether considering a defendant's conduct for purposes of liability or a plaintiff's for purposes of reducing his recovery, we agree with the reasoning of the New York Court of Appeals in *Spier, supra*, 452, that "the burden of buckling an available seat belt may, under the facts of the particular case, be found by the jury to be less than the likelihood of injury when multiplied by its accompanying severity."

We are not persuaded that all reasonable persons would agree that the burden of seat belt use, or the utility of seat belt nonuse, outweighs the resulting magnitude of the risk of injury. We are likewise not persuaded that any ascertainable public policy considerations could require that such an approach be adopted and applied in all cases. Accordingly, we hold that whether failure to use a seat belt constitutes comparative negligence so as to require the proportionate reduction of a plaintiff's recovery is an evaluative issue appropriately within the province of the jury.

If competent evidence is proffered to establish that the failure to use an available and operational seat belt contributed to producing plaintiff's damages, then the issue of comparative negligence, including the accompanying issue of causation, should be submitted to the jury pursuant to the special verdict form ordinarily used in such cases.

v

Before addressing the second issue, we pause to

acknowledge the recent enactment of the mandatory seat belt usage legislation, MCL 257.710e; MSA 9.2410(5), and to respond to the positions expressed in the dissenting opinions as they relate to that legislation. That statute, which took effect on July 1, 1985, requires drivers and front-seat passengers of motor vehicles operated in this state to wear seat belts, making the failure to use them unlawful. Section five provides, furthermore, that failure to use a seat belt in violation of the statute may be considered evidence of negligence, also providing that such negligence shall not reduce a plaintiff's recovery by more than five percent. The statutory seat belt usage requirement and its accompanying provisions are inapplicable in the instant case because: (1) the accident occurred prior to the statute's effective date, (2) plaintiff was a rear-seat passenger to whom the statute, by its terms, would not have applied, and (3) the accident occurred beyond the territorial boundaries of this state where it would not have been contrary to this statute for any passenger not to have used a seat belt.

The "no duty" formulation relied upon in *Schmitzer, supra,* to exclude evidence of failure to use a seat belt was premised upon the misplaced analysis that because seat belt use was not statutorily required, "no duty" to use seat belts within the context of common-law negligence could ever exist. We have rejected that analysis above, concluding that it erroneously combined and confused the duty question—whether the actor was under any obligation to exercise reasonable care under the circumstances—with the specific standard of care—whether the particular conduct in question was in derogation of that legal duty. The misplaced nature of this aspect of that "no duty" formulation hardly warrants further discussion; it

is self-evident. Common-law negligence jurisprudence in this jurisdiction has, of course, developed entirely independently of any statutory directives. The "duty" element of common-law negligence has never been dependent upon the existence and violation of a statute, irrespective of whether one considers that element from the perspective of a defendant's liability or a plaintiff's recovery.

No issue concerning the potential effect that the enactment of the safety-belt statute might arguably have in our decision in this case has been raised or addressed by the parties. Nevertheless, it has now been expressed in the dissenting opinions of Justice LEVIN and Justice ARCHER, although for somewhat different reasons, that the enactment of that statute should affect our decision in this case, persuading us to adopt as a matter of this state's common law the decision of the Court of Appeals which we have concluded was clearly erroneous. After considering the alternatives, without the benefit of adversary appellate advocacy, we are not persuaded to affirm the decision of the Court of Appeals on the basis of the enactment of that statute. Inasmuch as the seat belt legislation is inapplicable, our decision in this case is governed by the common law. See *Pittman v City of Taylor,* 398 Mich 41; 247 NW2d 512 (1976). The decision we review, likewise, was rendered entirely on that basis.

Justice ARCHER would hold that, to the extent that the Legislature has not required automobile occupants to use seat belts, evidence of the failure to use them for purposes of comparative negligence must be excluded and withheld from jury consideration because "no duty" to use the safety devices can otherwise exist. Justice ARCHER's anal-

ysis is based in part on the assertion that because
the Legislature provided that a violation of the
statute, effective on July 1, 1985, may be consid-
ered evidence of negligence, it intended by nega-
tive implication that in all other cases a failure to
use a seat belt may not be admissible as evidence
of comparative negligence. We are not inclined,
however, to engage in statutory interpretation by
negative implication on the basis of legislative
silence. That the Legislature has not required
rear-seat automobile passengers traveling outside
the territorial boundaries of this state prior to the
effective date of the seat belt usage law to "buckle
up" does not persuade us to affirm an unsupporta-
ble exception to the common law and the statuto-
rily prescribed comparative negligence doctrine.[18]
We also note that, unlike Justice LEVIN, Justice
ARCHER is of the opinion that the decision of the
Court of Appeals, adopting the reasoning of
*Schmitzer, supra,* was not erroneous as a matter of
common law. We find the additional reasons ex-
pressed in Justice ARCHER's opinion in this regard
to be unconvincing. Some of those reasons are
entirely misplaced inasmuch as they relate to a

[18] Contrary to the assertions in the dissenting opinion, we have not,
in our decision in this regard, "engaged in judicial legislation," nor
have we "invite[d] legislative action to affirm [our] decision." Our
analysis, rather, is premised upon our obligation to decide this appeal
by applying the law that governs our decision of it—the common law.
See, e.g., *Pittman, supra.*

Inasmuch as the mandatory seat belt usage legislation is inapplica-
ble in the present case, we have reached our decision entirely as a
matter of the common law, as did the trial court and the Court of
Appeals. We have not, of course, intended to imply that the Legisla-
ture is bound by our development of that body of the law. Finally, we
would note, if it is not obvious, that the result favored by the dissent
—that a failure to use a seat belt may not, as a matter of law,
constitute comparative negligence under any circumstances—would
not be more consistent with the seat belt usage statute than our
decision. That statute, because of its inapplicability, has not affected
our decision in this case which we have reached entirely on the basis
of the common law.

mischaracterization of our analysis,[19] some are inconsistent with prior decisions of this Court,[20] and others are unpersuasively misleading.[21]

Justice LEVIN, in contrast, is of the opinion that the enactment of the mandatory seat belt usage law effectively codified the decision of the Court of Appeals in *Schmitzer, supra,* and, therefore that this Court is precluded from deciding the issue by application of the common law. Thus, Justice LEVIN would affirm the clearly erroneous decision of the Court of Appeals in the instant case on the

[19] Justice ARCHER's opinion for affirmance incorrectly maintains that we would hold that failure to use a seat belt is negligent; that plaintiffs have "a duty" to use them. That, of course, is not what we have held. Our holding, rather, is that because reasonable minds might differ, the issue may not be withheld from the jury; it may not be decided one way or the other as "a matter of law." Our position, simply stated, is that a plaintiff's "negligence" is to be determined in the same manner as a defendant's "negligence."

Our analysis of the comparative negligence issue is premised upon the conclusion that the determinative inquiry does not concern the "duty" question. That question, in our view, is whether the plaintiff was under any obligation to exercise reasonable care under the circumstances. Justice ARCHER's dissenting opinion, like the decision of the Court of Appeals, confuses the duty question with the specific standard of care, and, as a result, does not respond to our analysis.

[20] Justice ARCHER's assertion that a plaintiff's contributory negligence should somehow be distinguished or treated differently in products liability cases is inconsistent with *Karl,* n 1 *supra.* Likewise, the statement in that opinion that a plaintiff's contributory fault is less culpable than a defendant's because the former "merely exposes [oneself] to a risk" whereas the latter "distribute[s] risks to the world at large," therefore implying that a plaintiff's alleged negligence is to be determined differently than a defendant's, is inconsistent with *Hardy, supra.* In determining fault, the negligence standards are identical.

[21] The assertion in Justice ARCHER's opinion that the majority view among other jurisdictions prohibits the introduction of a plaintiff's failure to use a seat belt is misleading because the majority view referred to includes contributory negligence jurisdictions. In comparative fault jurisdictions in which the issue has been addressed, the majority view is to the contrary. For a list of those decisions see Note, 50 Mo L R 976, n 83, n 11 *supra.*

With regard to the crashworthiness issue, the courts in other jurisdictions have unanimously held that evidence of safety features, including seat belts, may not be precluded from jury consideration. See part VI. See, also, Werber, n 11 *supra,* 250-251.

basis of the doctrines of legislative supremacy and judicial restraint. We disagree in somewhat general terms with the approach espoused by Justice LEVIN and, more specifically, with the application of that approach in this case.

With respect to the former, we rely upon the decision of this Court in *Pittman, supra.* In *Pittman,* the Court changed the common law applicable to cases arising prior to the effective date of the governmental immunity act. In the statute involved in *Pittman,* the Legislature had expressly codified the common-law immunity established in prior decisions of this Court. The Court analyzed its decision in that case, however, upon the correct axiom that the common law and the statutory law exist entirely independent of one another. The dissenting opinion in *Pittman* expressed the approach that Justice LEVIN now suggests should be applied in the present case. Five members of the *Pittman* Court, including Justice LEVIN, however, were of the opinion that they were obligated to decide the issue presented by applying the law that governed their decision of it: the common law. While expressed in two separate opinions, the Court's rationale was that, to the extent that the legislation was inapplicable—that is, in cases like *Pittman* which arose prior to its effective date— the Court was not precluded from overruling its prior decisions.

We agree that an appropriate exercise of this Court's discretion may require legislative deference in some cases on the basis that the Legislature has expressed the public policy of this state. See, e.g., *Kovacs v Chesapeake & O R Co,* 426 Mich 647; 397 NW2d 169 (1986). Without discussing the potential factors which might militate in favor of legislative deference in such cases, we are convinced that such an approach would be less appro-

priate in the instant case than it would have been in *Pittman, supra.*

In *Pittman,* the Legislature had expressly codified the common-law rule adopted in the prior decisions of this Court. In contrast, this Court had not addressed the admissibility of evidence of a failure to use a seat belt for purposes of comparative negligence, and we disagree with Justice Levin that by denying leave to appeal in *Schmitzer, supra,* this Court in any way tacitly acquiesced in the Court of Appeals reasoning in that case. In any event, had the Legislature expressly codified the common-law rule adopted in *Schmitzer,* that there is "no duty" to use seat belts, and, therefore, that evidence of a failure to use a seat belt is inadmissible for purposes of comparative negligence, the approach expressed in the *Pittman* dissent as espoused by Justice Levin in this case might arguably have been more persuasive. In the seat belt statute, however, the Legislature has expressly decreed to the contrary: that failure to use a seat belt in violation of the statute "shall be admissible as evidence of negligence." While the five-percent limitation on the reduction of recovery has not escaped our consideration, we disagree that concerning the substantive question—whether failure to use a seat belt may be evidence of comparative negligence—the Legislature has codified the *Schmitzer* Court's decision.

The question of specific percentage limitations is not now before the Court. Furthermore, unlike the Legislature, the judiciary has traditionally not involved itself in the setting of arbitrary figures or percentages. Thus, when faced with the question whether, because of the five-percent limitation, we should affirm, as a matter of common law, an erroneous and unsupportable exception to the doctrine of comparative negligence, we are compelled

to answer in the negative. We are not persuaded that adopting the decision of the Court of Appeals on the basis of legislative deference would be an appropriate resolution of this issue. The issue presented does not involve statutory construction, and the decision of the Court of Appeals is erroneous as a matter of the common law which governs this case and continues to exist independent of legislative action. While we are cognizant of the potential argument that the effect of the five-percent limitation could lead, potentially and perhaps anomalously, to the irrational result of protecting the recoveries of individuals whose failure to use seat belts was in violation of the statute, while not protecting the recoveries of those whose failure to use seat belts was not in violation of it, we are compelled to conclude that that effect is essentially a legislative concern.

Finally, while unnecessary to his suggested analysis, which would result in affirming the decision of the Court of Appeals, Justice LEVIN addresses another issue which has not been raised or addressed by the parties: whether a decision of this Court changing a common-law rule established by the Court of Appeals should be given complete prospective application. We disagree with Justice LEVIN's suggested analysis of that question, again without the benefit of adversary appellate advocacy, on the basis that it is generally contrary to civil appellate jurisprudence and policy. No citation to prior decisions of this Court is even necessary to support the former; it is axiomatic. The negative policy implications of such a rule are also self-evident; what incentive would civil litigants have to prosecute an appeal from an erroneous decision of the Court of Appeals when, even if successful, their success would be of no immediate benefit to themselves? Furthermore, we disagree

with Justice LEVIN's characterization of the rule addressed and adopted for the first time in *Schmitzer, supra,* as "well established." Justice LEVIN's inclusion of cases decided prior to this Court's adoption of comparative negligence to support that proposition is misplaced. The issue we agreed to address in this case was presented precisely in the light of that significant jurisprudential development.

The decision of the Court of Appeals in the instant case, adopting the reasoning of *Schmitzer, supra,* was erroneous. It was inconsistent with then-existing decisions of this Court and generally recognized principles of negligence law when it was rendered. We decline the opportunity presented by Justice LEVIN and Justice ARCHER to infer on the basis of legislative silence an intent to affirm the decision of the Court of Appeals in *Schmitzer.* Rather, we are convinced that the only appropriate resolution of this case requires applying the law that governs our decision of it: the common law.

## VI

The Court of Appeals did not address that portion of the trial court's ruling allowing the admission of seat belt evidence for the purpose of defending the crashworthiness design of the automobile as a whole. Plaintiff has asserted, as an independent theory of liability, that the design of the vehicle in question was a cause of her injuries because that design created an unreasonable risk of harm to its occupants resulting from an impact or collision. Plaintiff's theory in this regard is based upon the manufacturer's duty of designing crashworthy vehicles as adopted in *Larsen, supra,* and in *Rutherford v Chrysler Motors Corp,* 60 Mich App 392; 231 NW2d 413 (1975).

Our research discloses that at least one Court of Appeals panel has addressed this question. See *DeGraaf v General Motors Corp,* 135 Mich App 141; 352 NW2d 719 (1984). While not disapproving of the admission of seat belt evidence for the purpose of defending the crashworthiness design of the vehicle as a whole, the *DeGraaf* Court vacated the jury's verdict and remanded that case for a new trial on the basis of its conclusion that the jury instruction given was erroneous.

MBNA argues that seat belt evidence should be admissible in crashworthiness cases to defend the safety design of the vehicle, and the relation of that design to the plaintiff's injuries, entirely independent of the comparative negligence issue. We agree with one-half of that argument completely.

By its nature, the defective crashworthiness design theory of liability requires that the vehicle be considered as a whole. See *Melia v Ford Motor Co,* 534 F2d 795 (CA 8, 1976); *Dreisonstok v Volkswagenwerk, AG,* 489 F2d 1066 (CA 4, 1974); *Daly v General Motors Corp,* 20 Cal 3d 725; 144 Cal Rptr 380; 575 P2d 1162 (1978). As expressed by the California Supreme Court in *Daly,* "the issue of defective design is to be determined with respect to the product as a whole . . . ." *Id.,* 746. Accordingly, the jury should consider the vehicle's overall design, including safety features, in order to determine the crashworthiness issue, and, thus, whether the vehicle was defective in design. The need to weigh competing considerations in an overall product design, generally, and the relevant factors in that evaluation, were recently discussed by this Court in *Prentis, supra.*

Evidence of the seat-restraint system goes to the heart of the issue in crashworthiness cases in which the plaintiff's injuries were sustained after being ejected from the vehicle, a result which seat

belts are specifically designed to prevent. Whether
the plaintiff presents her case through a negli-
gence theory—attempting to establish that the
design of the vehicle created an unreasonable risk
of injury—or through a breach of implied war-
ranty theory—that the vehicle was not reasonably
fit for its intended and foreseeable uses—the deter-
minative issue of liability concerns whether the
vehicle was unreasonably unsafe because of its
design. Evidence of product safety features specifi-
cally designed to prevent the injuries complained
of is entirely relevant to this issue. No reason,
even arguably sound, exists for excluding such
evidence on this liability issue. Plaintiff has pro-
vided us with none.

In crashworthiness cases, the vehicle is to be
considered as an integrated whole. Accordingly,
seat belt evidence is admissible for that purpose.
In the event that this cause proceeds to trial, the
jury should be permitted to consider evidence
concerning the seat-restraint system, along with
all other relevant factors, in determining whether
the vehicle was defective in design pursuant to
plaintiff's crashworthiness theory.

The limited permissible scope of such evidence
in light of its appropriate purpose, however, com-
pels us to reject the second part of defendant's
argument concerning this issue. MBNA has inter-
twined an argument concerning the element of
causation within the context of presenting seat-
restraint evidence in its defense of the vehicle's
safety design, arguing that, independent of the
comparative negligence issue, it may properly seek
to establish that plaintiff's failure to use a seat
belt was *the* cause in fact and sole proximate
cause of her enhanced injuries rather than any
design defect in the vehicle. Interposing the issue
of causation within the same context as the issue

of negligent design tends to confuse the purposes for which defendant seeks to introduce seat belt evidence, as well as the elements of plaintiff's cause of action. It was a similar theory, and jury instruction based thereon, which the Court of Appeals in *DeGraaf, supra,* found to be error requiring reversal.

The plaintiff's conduct and its causal relation to her injuries are not relevant to the issue of the vehicle's design. While it is true that plaintiff must establish both that the vehicle was defective in design and that that defect proximately caused her enhanced injuries, those elements are entirely distinct. In considering whether the insufficient crashworthiness design of the vehicle was a proximate cause of plaintiff's injuries, the focus is upon the vehicle's design and its relation to the plaintiff's injuries. The plaintiff's conduct and the relation of that conduct to her injuries are properly considered within the context of the comparative fault issue.

Assuming that the vehicle is determined to be uncrashworthy pursuant to plaintiff's theory, the assertion that plaintiff's failure to use a seat belt could be found to be the only cause of her enhanced injuries, without regard to whether that failure is found to have been comparatively negligent, is a curious and unusual argument when viewed purely in the context of causality. While a manufacturer may ordinarily contend that, even if defectively designed, the design of its product was not a cause of the plaintiff's injuries, the theory by which MBNA seeks to do so in this regard under the facts of the instant case is improper.[22]

---

[22] Defendant's argument in this regard is presented entirely independently of comparative negligence and without reference to the so-called misuse defense. Assuming that plaintiff's failure to use a seat belt is found not to have been negligent, MBNA does not assert any

Therefore, we caution the trial court, in the event that this cause proceeds to trial, to delimitate the appropriate use of seat-restraint evidence for the purpose of considering the reasonableness of the design of the vehicle under plaintiff's crashworthiness theory. While such evidence could enable the jury to properly determine whether the vehicle's overall design made it crashworthy, and thus not negligently defective in design, no legal basis independent of fault could enable the jury to determine that, because plaintiff's failure to use the seat restraint resulted in her enhanced injuries, the design of the vehicle could not have been a legal cause of those injuries. Whether, and to what extent, plaintiff's failure to use an available seat restraint proximately caused her enhanced injuries may properly be considered within the context of the comparative fault issue, and even then only after consideration of the substantive negligence question.[23]

basis upon which plaintiff's failure to use a seat belt could theoretically be determined to be a legal cause of her enhanced injuries, much less the only cause. Viewed within the context of the element of causation, without regard to any fault on plaintiff's part, defendant's argument is entirely misplaced. We agree with the panel in *DeGraaf, supra,* that the presentation of that legally unsupportable "causation" theory would be erroneous.

Assuming, arguendo, that plaintiff successfully established that the vehicle in the present case was uncrashworthy because of a defectively designed door and door-locking mechanism, the causation element would require her to establish that that defective design proximately caused her enhanced injuries by resulting in her ejection from the vehicle. Defending against that element of plaintiff's cause of action, MBNA could properly seek to establish that, because of the nature and point of initial impact, the same result would have occurred even in the absence of the design defect. Thus, with regard to the causation element for purposes of plaintiff's crashworthiness design theory, the focus would be upon the causal relation between the vehicle design and the plaintiff's injuries.

[23] Whether, and to what extent, plaintiff's failure to use the seat restraint constituted negligence which contributed to her injuries may properly be considered within the context of the comparative negligence issue. Furthermore, that issue may be properly considered only after the trier of fact has decided the substantive issue of defendant's

VII

In conclusion, we hold that evidence of a failure to use a seat belt may be admissible to support an affirmative defense of comparative negligence. If competent evidence is proffered, the issue may appropriately be submitted for jury consideration. Additionally, we hold that in crashworthiness cases, seat-restraint evidence is admissible for the purpose of defending the design of the vehicle as a whole, entirely independently of the comparative negligence defense. We emphasize, however, that for this latter purpose it is the design of the vehicle which is at issue, and not the plaintiff's conduct in failing to use the provided seat-restraint system.

Our decision in this case is to be given limited retroactive effect, applying to cases tried after the date this opinion is issued and those cases pending on appeal in which issues concerning the admissibility of seat belt evidence have been properly preserved. We express no opinion concerning the future applicability of MCL 257.710e; MSA 9.2410(5) with regard to cases in which the injury occurred after the effective date of that statute and a plaintiff's failure to use a seat belt was in violation of its provisions.[24]

Thus, we reverse the decision of the Court of Appeals and reinstate the trial court's denial of plaintiff's motions to exclude all evidence of the

_____

liability. Prior to a determination of plaintiff's fault, the causal relation of her conduct and the claimed damages is irrelevant to defendant's liability.

[24] For the reasons discussed in part v, the mandatory seat belt usage law is inapplicable in the instant case. No issue concerning the present or future effect of that statute has been raised by the parties in this Court. Other than acknowledging our recognition of the potentially troublesome concern discussed in part v, we are not inclined to comment further.

existence of and failure to use seat belts, with the appropriate limitations expressed in part VI.

BRICKLEY and CAVANAGH, JJ., concurred with RILEY, C.J.

BOYLE, J. (*concurring*). I would approve the trial court's ruling on the plaintiff's motion to exclude evidence of failure to use seat belts to the extent it would permit that evidence on the question of plaintiff's comparative fault. I also agree that evidence on the presence of seat belt restraints is admissible in defense of the crashworthiness of a car. To this extent, I agree with Chief Justice RILEY's rationale and result on both issues. I also specifically concur in part V of Chief Justice RILEY's opinion.

I would decline, however, in the context of a ruling on a motion in limine and in the absence of a full trial record, to reach the questions of the proper relation of a plaintiff's failure to wear a seat belt and whether an alleged design defect was a factual or proximate cause of a plaintiff's injuries.

ARCHER, J. I dissent.

This case is an interlocutory appeal. The automobile accident occurred in Ohio. Under Ohio[1] and Michigan law, evidence of nonuse of a seat belt is presently excluded. This case, having been brought in Michigan, and Michigan's jurisdiction not having been challenged, we apply Michigan law. *Olm-*

---

[1] *Roberts v Bohn,* 26 Ohio App 2d 50; 269 NE2d 53 (1971), rev'd on other grounds sub nom *Suchy v Moore,* 29 Ohio St 2d 99; 279 NE2d 878 (1972); *Bertsch v Spears,* 20 Ohio App 2d 137; 252 NE2d 194 (1969); *Woods v City of Columbus,* 23 Ohio App 163; 492 NE2d 466 (1985); *Bantel v Herbert,* 31 Ohio App 3d 167; 509 NE2d 981 (1987). The Ohio Legislature has enacted a mandatory seat belt statute. See Ohio Rev Code Ann, § 4513.26.3 (Page), effective May 6, 1986.

*stead v Anderson,* 428 Mich 1; 400 NW2d 292 (1987).

The Michigan Legislature addressed the seat belt issue by enacting a statute which required automobile manufacturers to install safety belts in automobiles. The statute, MCL 257.710b; MSA 9.2410(2), provided at the time:

> No private passenger vehicle manufactured after January 1, 1965 shall be offered for sale in this state unless the vehicle is equipped with safety belts[2] for the use of the driver and 1 other front seat passenger. All safety belts and bolts and brackets used in the installation of the safety belts shall meet the minimum specifications of the society of automotive engineers as prescribed on April 1, 1963. This section shall not apply to trucks, buses, hearses, motorcycles or motor driven cycles.[3]

. Although the statute required that automobiles be equipped with seat belts, it imposed no requirement that seat belts be used.

The majority of states enacted such legislation, and federal statutes also required the installation of seat belts in automobiles. Following the passage of this legislation, defendants in automobile accident cases began raising the "seat belt defense." Michigan case law has consistently held that evi-

---

[2] The statute does not define what constitutes such a safety restraint device, nor does it indicate whether it refers to lap belts or lap belts with shoulder harnesses.

[3] 1949 PA 300, § 710b, added by 1961 PA 163, § 1, effective September 8, 1961, as amended by 1963 PA 212, § 1, effective September 6, 1963.
The pertinent provision of the statute currently provides:

> A private passenger vehicle manufactured after January 1, 1965 shall not be offered for sale in this state unless the vehicle is equipped with safety belts for the use of the driver and 1 other front seat passenger.

dence that a plaintiff was not wearing a seat belt is inadmissible.

The Court of Appeals first addressed the seat belt issue in *Romankewiz v Black,* 16 Mich App 119; 167 NW2d 606 (1969). The plaintiff was injured in an automobile accident. In an affirmative defense, the defendant alleged that the plaintiff's nonuse of a seat belt constituted contributory negligence. The trial court denied the plaintiff's motion to strike the affirmative defense, and the plaintiff appealed. The Court of Appeals reversed. After reviewing Michigan's seat belt installation statute and cases in other jurisdictions, the Court held, as a matter of law, that the plaintiff had no duty to wear a seat belt. "The plaintiff's failure to fasten his seat belt was not such negligence as to contribute to the cause of the accident. Unbuckled plaintiffs do not *cause* accidents." *Romankewiz, supra,* p 126. (Emphasis in original.)

Regarding the issue of mitigation of damages, the Court stated: "If there is no duty to fasten a seat belt, such a failure cannot be held to be a breach of the duty to minimize damages." The Court also held that "failure to use a seat belt is not appropriate as a damage-mitigating factor or under the doctrine of avoidable consequences." The Court concluded, stating that *"it is for the legislature, which in its wisdom has prescribed seat belts, to prescribe any required use thereof if it chooses." Id.,* p 127. (Emphasis added.)

Thus, the Court in *Romankewiz* prohibited the admission of evidence that the plaintiff did not use a seat belt to show contributory negligence or to mitigate damages.

One year later, the rule was applied in a products liability case. In *Selmo v Baratono,* 28 Mich App 217; 184 NW2d 367 (1970), lv den 384 Mich 834 (1971), the Court found no error in the trial

court's refusal to instruct the jury that it could consider the plaintiff's failure to wear a seat belt in determining damages.

When *Romankewiz* and *Selmo* were decided, Michigan still adhered to the doctrine of contributory negligence in tort cases. According to that doctrine, a plaintiff was completely barred from recovery of damages if there was proof of any negligence on the plaintiff's part.[4] Therefore, if a plaintiff had had a duty to wear a seat belt, proof that the plaintiff did not use a seat belt would bar a plaintiff from any recovery regardless of the defendant's negligence in causing the accident.

Subsequently, the Court replaced the doctrine of contributory negligence with the doctrine of comparative negligence in *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), reh den 406 Mich 1119 (1979).[5] The doctrine of comparative negligence provided that proof of a plaintiff's contributory negligence would only be a partial bar to the plaintiff's recovery since the plaintiff could recover damages, but the amount of the damages would be reduced to the extent of the plaintiff's negligent contribution.

Following this change, the Court of Appeals reviewed the rule barring admission of the plaintiff's nonuse of a seat belt under the doctrine of comparative negligence in *Schmitzer v Misener-Bennett Ford,* 135 Mich App 350; 354 NW2d 336 (1984), lv den 422 Mich 852 (1985). In *Schmitzer,* the Court concluded that evidence of a plaintiff's failure to use a seat belt was inadmissible as evidence of the plaintiff's contributory negligence or of the plaintiff's failure to mitigate damages. The Court gave two reasons to support its hold-

---

[4] See Prosser & Keeton, Torts (5th ed), § 65, pp 458-459.

[5] As of 1982, some forty states had adopted some form of comparative negligence. Prosser, *supra,* § 67, p 471.

ing. First, the Court noted that "[u]nder any interpretation of comparative negligence, no matter how, or to what, negligence is compared, the trier of fact must first find that the plaintiff was *negligent.*" *Id.,* p 358. (Emphasis in original.) The Court added that negligence will not be found merely upon proof of an act which causes injury. Such a finding of negligence can be sustained only "where the person, in committing the injury-producing act, breached some legally cognizable duty." *Id.* Second, the Court stated that no statute mandates seat belt use, so the defendants could not argue that nonuse was negligent per se. Moreover, the Court found that the common law fails to provide a basis for concluding that the plaintiff's failure to wear seat belts was a breach of the duty to use ordinary care. The Court concluded that imposition of such a duty is an act more appropriately performed by the Legislature. Specifically, the Court observed:

> [I]mposition of such a duty is an act more appropriately performed by the Legislature. The Legislature is better equipped to consider the various issues raised by a law mandating seat-belt use, e.g., the majority of the population's disinclination to wearing seat belts, the contradictory studies regarding the efficacy of seat belts as safety devices, and the collateral problems associated with other types of safety devices. [*Schmitzer,* p 359.]

While other jurisdictions have reached contrary conclusions when considering the admissibility of evidence of a plaintiff's nonuse of a seat belt, Michigan's rule of prohibiting the admissibility of such evidence is the better approach.[6] Retaining

[6] In *Taplin v Clark,* 6 Kan App 2d 66; 626 P2d 1198 (1981), the Kansas Court of Appeals considered whether evidence of a rear-seat passenger's failure to wear a seat belt was admissible. The court held

the rule of inadmissibility of seat belt nonuse is particularly important in a products liability case because the types of conduct being considered are usually varied and different.

Historically, passengers in automobiles have been considered to be free of contributory or comparative negligence unless exceptional circumstances were present.

Furthermore, the injured plaintiff in this case was a passenger in the rear seat. The risks of nonuse of a seat belt for a rear-seat passenger are unclear, and even the Legislature has not required rear-seat passengers to use seat belts.

The Legislature, during its recent tort law reforms, addressed the issue of seat belt use. During its review, the Legislature was informed of the statistics relating to the effect of seat belt use on reducing injuries and deaths in automobile accidents.

The statute, MCL 257.710e; MSA 9.2410(5), provides in pertinent part:

> (3) Each driver and front seat passenger of a motor vehicle operated on a street or highway in this state shall wear a properly adjusted and fastened safety belt, except that a child less than 4

that such evidence was inadmissible. In rejecting the seat belt defense, the court quoted *Hampton v State Hwy Comm,* 209 Kan 565; 498 P2d 236 (1972):

> "Plaintiff was therefore not violating any statutory duty [in not wearing a seat belt]. Neither, we believe, was he falling below the standard required of a reasonable, prudent man. We have nothing before us on which we could confidently base a finding that the accepted community standard of care requires one to buckle up routinely; experience dictates to the contrary." [*Id.,* p 67.]

The court in *Taplin* concluded that the change in Kansas to comparative negligence did not change the basic duties required of drivers and passengers to be considered in automobile tort litigation.

years of age shall be protected as required in section 710d.[7]

The statute also provides sanctions for failure to wear a safety belt:

> (5) Failure to wear a safety belt in violation of this section may be considered evidence of negligence and may reduce the recovery for damages arising out of the ownership, maintenance, or operation of a motor vehicle. However, such negligence shall not reduce the recovery for damages by more than 5%.

After its evaluation, the Legislature did two things. First, the Legislature made seat belt use mandatory only for the driver and the front-seat passenger. The Legislature also provided that a plaintiff's recovery could not be reduced by more than five percent for his failure to wear a seat belt. Second, the Legislature was silent about the issue of seat belt use by rear-seat passengers.

Although Michigan's mandatory seat belt statute has been criticized for failing to apportion the damages for injuries in collisions and for creating a windfall for plaintiffs, the seat belt defense "would soon result in windfalls to tortfeasors who would pay only partially for the harm their negligence caused."[8]

A majority of courts, including contributory negligence jurisdictions, prohibit the introduction of a plaintiff's nonuse of a seat belt to reduce a plaintiff's recovery.[9] Among the reasons cited are that a

---

[7] 1985 PA 1. This statute took effect more than six years after the accident in this case.

[8] Note, *A compromise between mitigation and comparative fault? A critical assessment of the seat belt controversy and a proposal for reform,* 14 Hofstra L R 319, 327, 338 (1986).

[9] *Id.,* p 330.

"defendant's fault in causing the accident distributed risks to the world at large and was capable of causing some degree of damage to any plaintiff within the sphere of foreseeability. Conversely, a plaintiff's failure to use a seat belt creates no risks to others, but merely exposes himself to a risk."[10]

Turning to the facts of this case, the majority invites legislative action to affirm its decision.[11] In reaching its results today, the majority has engaged in judicial legislation.[12] The majority is imposing a duty on rear-seat passengers to wear seat belts or risk being found negligent and suffer a reduction in damages. The Legislature did not impose such a duty after it considered all of the facts and evidence presented regarding the use of the seat belts. Manufacturers, distributors, and parts suppliers certainly had the opportunity to address the Legislature on this issue. To the extent that the law regarding the use of seat belts should be changed, it is for the Legislature and not for our Court.

I believe that it is patently unfair to retroactively impose a duty on all rear-seat passengers in

---

[10] *Id.,* p 328.

[11] While we are cognizant of the potential argument that the effect of the five-percent limitation could lead, potentially and perhaps anomalously, to the irrational result of protecting the recoveries of individuals whose failure to use seat belts was in violation of the statute, while not protecting the recoveries of those whose failure to use seat belts was not in violation of it, we are compelled to conclude that that effect is essentially a legislative concern. [*Ante,* p 469.]

[12] That the Legislature has not required rear-seat automobile passengers traveling outside the territorial boundaries of this state prior to the effective date of the seat belt usage law to "buckle up" does not persuade us to affirm an unsupportable exception to the common-law and the statutorily prescribed comparative negligence doctrine. [*Ante,* p 465.]

automobiles when clearly no such duty was declared or negligence issue recognized at common law or by statute. The public policy decision that rear-seat passengers have a duty to wear seat belts is best left to the Legislature.

Following the majority's opinion, a trial judge or jury may reduce a plaintiff's damage award by any percentage up to one hundred percent when a rear-seat passenger was not wearing a seat belt, while the Legislature has limited the reduction of a damage award to not more than five percent for a driver and front-seat passenger who were not wearing seat belts.[13] This result is inequitable because, at the time of the accident in this case, there was absolutely no duty declared or negligence issue recognized at common law or by statute to wear a seat belt. Moreover, the majority's decision may require years of clarification to properly instruct a jury as to how to reach its decision if it chooses to reduce a plaintiff's damages.[14]

While I agree in part with the majority that in crashworthiness cases the vehicle should be consid-

---

[13] Accordingly, we hold that whether failure to use a seat belt constitutes comparative negligence so as to require the proportionate reduction of a plaintiff's recovery is an evaluative issue appropriately within the province of the jury.

If competent evidence is proffered to establish that the failure to use an available and operational seat belt contributed to producing plaintiff's damages, then the issue of comparative negligence, including the accompanying issue of causation, should be submitted to the jury pursuant to the special verdict form ordinarily used in such cases. [*Ante*, p 462.]

[14] Our decision in this case is to be given limited retroactive effect, applying to cases tried after the date this opinion is issued and those cases pending on appeal in which issues concerning the admissibility of seat belt evidence have been properly preserved. We express no opinion concerning the future applicability of MCL 257.710e; MSA 9.2410(5) with regard to cases in which the injury occurred after the effective

ered as a whole, I would, nevertheless, bar testimony regarding the nonuse of seat belts subject to the applicability of MCL 257.710e; MSA 9.2410(5).

The Legislature enacted the mandatory seat belt law more than six years after the accident in this case. The statute, therefore, represents what the Legislature considered to be in the best interest of the citizens of this state.

I would affirm the decision of the Court of Appeals.

LEVIN, J. (*separate opinion*). The question whether 1985 PA 1 should be taken into consideration[1] in deciding the comparative negligence and reduction of damages issues has not been briefed and argued. We would, because of the importance of the question, require, as we did in *Camaj v S S Kresge Co,* 426 Mich 281; 393 NW2d 875 (1986), further briefing concerning the import of Act 1 before deciding the comparative negligence and reduction of damages issues.

The question whether a decision of this Court changing a common-law rule should be given retroactive or prospective effect is a separate question from whether the common-law rule should be changed. There has been no briefing or advocacy

---

date of that statute and a plaintiff's failure to use a seat belt was in violation of its provisions.[24]

---

[24] For the reasons discussed in part V, the mandatory seat belt usage law is inapplicable in the instant case. No issue concerning the present or future effect of that statute has been raised by the parties in this Court. Other than acknowledging our recognition of the potentially troublesome concern discussed in part V, we are not inclined to comment further.

[*Ante,* p 475.]

[1] Compare *Pittman v City of Taylor,* 398 Mich 41; 247 NW2d 512 (1976), with *Kovacs v Chesapeake & O R Co,* 426 Mich 647; 397 NW2d 169 (1986).

on whether the new rule should be given retroactive or prospective effect. That question, too, should not be decided without briefing and advocacy.[2]

I agree with the view expressed in the lead opinion that evidence concerning the seat-restraint system may be considered by the trier of fact in determining whether a motor vehicle was defective in design where the plaintiff asserts the crashworthiness doctrine as a theory of liability.

I

We agree with the admonitions in the lead opinion regarding expressions of opinion on issues that have not been raised, briefed, or argued. An appellate court ordinarily is not justified in raising an issue regarding the application in the cause under consideration of an established rule of law that has not been noticed by the litigants, that need not surface in the Court's opinion, and that, if raised and decided, would affect only the outcome of the cause under consideration.

The lead opinion does not, however, speak only to the outcome of the instant case. It states: "Our decision in this case is to be given limited retroactive effect, applying to cases tried after the date this opinion is issued and those cases pending on appeal in which issues concerning the admissibility of seat belt evidence have been properly preserved."[3]

The lead opinion states that Act 1 is "inapplica-

[2] See *Camaj v S S Kresge Co, supra,* 291 (LEVIN, J., concurring).

The rule is indeed well-established that a point not briefed and considered is not decided. [*CSC v Dep't of Labor,* 424 Mich 571, 609; 384 NW2d 728 (1986).]

[3] *Ante,* p 475.

ble in the instant case because: (1) the accident occurred prior to the statute's effective date, (2) plaintiff was a rear-seat passenger to whom the statute, by its terms, would not have applied . . . ."[4] The lead opinion will, I expect, be perceived by the bench and bar as deciding the possible effect of Act 1 on cases that arose before its enactment.[5]

It is one thing to say that Act 1 will not be applied in the instant case because no issue concerning the present or future effect of Act 1 has been raised by the parties in this Court. It is quite another to say that Act 1 is not applicable because the accident occurred before the effective date of Act 1 and because Act 1 by its terms does not apply to a rear-seat passenger. The latter statements in effect say, in contrast with what this Court did in *Kovacs v Chesapeake & O R Co,* 426 Mich 647; 397 NW2d 169 (1986), discussed in part III *infra,* that the enactment of Act 1 does not impede this Court from changing the common-law rule applicable to the period before enactment of Act 1.

The question of the import of Act 1 affects not only the plaintiff in the instant case, but countless, perhaps tens of thousands of "cases tried after the date this opinion is issued,"[6] which means, in effect, every case not yet tried where the accident occurred before July 1, 1985, and every case in-

─────────

[4] *Ante,* p 463.

[5] The lead opinion also suggests that there may be a question regarding the future applicability of Act 1. It states:

We express no opinion concerning the future applicability of [Act 1] with regard to cases in which the injury occurred after the effective date of that statute and a plaintiff's failure to use a seat belt was in violation of its provisions. [*Ante,* p 475.]

[6] *Ante,* p 475.

volving a rear-seat passenger whether the accident occurred before, on, or after that date.

The question of the import of Act 1 is addressed in this opinion only because the lead opinion addresses the question.[7] The discussion of the question in the lead opinion cannot be justified on the basis that another opinion addresses the question. It is one thing for a dissenting or concurring opinion to advert to or discuss an issue neither briefed nor argued, and quite another for a plurality or majority of the Court to do so. Discussion of an issue in a dissenting or concurring opinion cannot be read by the bench or bar as deciding the question.

When a dissenting or concurring opinion raises an issue, the majority has several options. The majority can respond, if it wishes to respond at all, by simply noting that the issue has not been raised, briefed, or argued, and that no opinion is intimated thereon. A tentative opposing view might even be expressed. A plurality or majority should not, however, purport to decide the issue without briefing or argument. The issue should be left open to be decided after briefing and argument.

Another option open to a majority, or a plurality with the vote of dissenting or concurring justices, is to order further briefing and argument so that the issue can be decided after adversary presentation. That is the course that we respectfully suggest the Court should have adopted in this case.

---

[7] If part v of the lead opinion and the second sentence, and accompanying footnote, of the penultimate paragraph (in part vii) of that opinion were withdrawn, this opinion would be withdrawn in its entirety except for the first three paragraphs of this opinion. And if the first sentence of the penultimate paragraph were withdrawn, the second paragraph of this opinion would be withdrawn.

II

Because we read the lead opinion as expressing, in part v of that opinion, a view regarding the import of Act 1, and because of the importance of this question—it potentially affects approximately one-third of the injury actions[8]—we believe it is incumbent upon us to express our disagreement with what we perceive to be the analysis of the lead opinion on this question.

After this cause was argued in the Court of Appeals, the Legislature enacted Act 1, generally requiring the driver and front-seat passenger of a motor vehicle to wear seat belts. No such obligation is imposed on rear-seat passengers. The act provides that "[f]ailure to wear a safety belt in violation of this section may be considered evidence of negligence and may reduce the recovery for damages arising out of the ownership, maintenance, or operation of a motor vehicle. However, such negligence shall not reduce the recovery for damages by more than 5%."[9]

The act was approved March 8, 1985, and provides that it shall take effect on July 1, 1985. The

[8] Annual Report of the State Court Administrator, Michigan 1986, p 29.

[9] MCL 257.710e(5); MSA 9.2410(5)(5).

A large majority of the statutes requiring adults to wear seat belts provide either that a violation cannot be grounds for reducing an award on the basis of comparative or contributory negligence, or limit the possible reduction to a small percentage of the award. Of the approximately twenty-six states other than Michigan that have statutes presently in effect, three follow Michigan in limiting the possible reduction to a small percentage. See Iowa Code Ann, § 321.445(4)(b)(2) (5%); La Rev Stat Ann, § 32.295.1(E)(4) (2%); Mo Ann Stat, § 307.178(3)(2) (1%).

Of the remaining twenty-three statutes, sixteen provide either that evidence of nonuse is not admissible in a civil action, or that it cannot be used to reduce an award. See Conn Gen Stat Ann, § 14-100a(c)(4); DC Code, § 40-1607; Ill Ann Stat, ch 95½, § 12-603.1(c); Ind Stat Ann, § 9-8-13-9; Kan Stat Ann, § 8-2504(c); Md Code Ann, § 22-412.3(g); Nev Rev Stat, § 484.641(3); NM Stat Ann, § 66-7-373(B); NC Gen Stat, § 20-135.2A(d); Ohio Rev Code Ann, § 4513.26.3(G) (Page); Okla Stat Ann,

accident in the instant case occurred over six years earlier, on April 18, 1979.

However, ten years before the accident, the Court of Appeals, in *Romankewiz v Black,* 16 Mich App 119; 167 NW2d 606 (1969), held that there is no duty to wear a seat belt, and that the failure to use a seat belt was not contributory negligence. The following year, in *Selmo v Baratono,* 28 Mich App 217; 184 NW2d 367 (1970), the Court of Appeals, in a products liability action against General Motors, adhered to *Romankewiz* and held that the trial court had not erred in refusing to instruct a jury that it could consider the failure to wear a seat belt in determining the amount of damages. Four years later, in *Placek v Sterling Heights,* 52 Mich App 619; 217 NW2d 900 (1974), the Court of Appeals ordered a new trial because

tit 47, § 12-420; Tenn Code Ann, § 55-9-604; Tex Rev Civ Stat Ann, art 6701d, § 107C(j); Utah Code Ann, § 41-6-186; Va Code, § 46.1-309.2(E); Wash Rev Code, § 46.61.688(6). Only two of the statutes specifically allow evidence of nonuse to reduce an award. See Cal Veh Code, § 27315(i); NY Veh & Traf Law, § 1229-c(8) (McKinney). Four of the remaining five statutes do not specifically state whether evidence of nonuse can be used to reduce an award. See Hawaii Rev Stat, § 291-11.6; Idaho Code, § 49-764; Minn Stat Ann, § 169.686; NJ Stat Ann, § 39:3-76.2h. One statute provides that evidence of nonuse cannot be used as "prima-facie" evidence of negligence. See Fla Stat Ann, § 316.614(10).

The Michigan statute is also consistent with the overwhelming majority of statutes in restricting the duty to drivers and front-seat passengers. See Conn Gen Stat Ann, § 14-100a(c)(1); DC Code, § 40-1602; Fla Stat Ann, § 316.614(4)(a); Hawaii Rev Stat, § 291-11.6(a); Idaho Code, § 49-764(1); Ill Ann Stat, ch 95½, § 12-603.1(a); Ind Stat Ann, § 9-8-14-1; Iowa Code Ann, § 321.445(2); Kan Stat Ann, § 8-2503(b); La Rev Stat Ann, § 32.295.1(B); Md Code Ann, § 22-412.3(b); Minn Stat Ann, § 169.686(1); Mo Ann Stat, § 307.178(2); Nev Rev Stat, § 484.641(2); NJ Stat Ann, § 39:3-76.2f(a); NM Stat Ann, § 66-7-372(A); NY Veh & Traf Law, § 1229-c(3) (McKinney); NC Gen Stat, § 20-135-2A(a); Ohio Rev Code Ann, § 4513.26.3(B)(3) (Page); Okla Stat Ann, tit 47, § 12-417(A); Tenn Code Ann, § 55-9-603(b)(1); Utah Code Ann, § 41-6-182; Tex Rev Civ Stat Ann, art 6701d, § 107C(b)(2); Va Code, § 46.1-309.2(A). Only two states, California and Washington, require adult, rear-seat passengers to wear seat belts. See Cal Veh Code, § 27315(d); Wash Rev Code, § 46.61.688(3). Only the California statute provides that evidence of nonuse by a rear-seat passenger may be used to show negligence or to mitigate damages.

the plaintiff had been questioned concerning her failure to use a seat belt at the time of the accident.

Nine months before Act 1 was enacted, the Court of Appeals again adhered to the rule of *Romankewiz, Selmo,* and *Placek,* in *DeGraaf v General Motors Corp,* 135 Mich App 141, 142; 352 NW2d 719 (1984), a products liability action where the driver claimed that she had suffered enhanced injuries because the steering column failed to collapse adequately upon impact with her body. The Court of Appeals held that the trial court had erred in instructing the jury that if it found that the driver's "failure to wear her seat belt was the sole proximate cause of her enhanced injuries it should render a verdict for defendant."

Two weeks later, in *Schmitzer v Misener-Bennett Ford, Inc,* 135 Mich App 350; 354 NW2d 336 (1984), the Court of Appeals addressed its prior holdings that evidence of failure to use a seat belt was not admissible on the issue of contributory negligence in light of the adoption of the doctrine of comparative negligence. The Court of Appeals reiterated the view expressed in its earlier decisions, and held that evidence of failure to use a seat belt was not admissible as evidence of the injured person's failure to mitigate damages.

Leave to appeal was not sought in *Romankewiz.* Leave to appeal was denied in *Selmo,* 384 Mich 834 (1971), in *Placek,* 392 Mich 811 (1974), and, twenty days after Act 1 was enacted, in *DeGraaf* and *Schmitzer,* 422 Mich 852 (1985).

The enactment of Act 1 should be viewed in the context of the consistent fifteen-year adherence by the Court of Appeals to the view that the failure to use a seat belt was not evidence of contributory or comparative negligence and could not be used in either an ordinary automobile negligence case

or in an automobile products liability case to reduce the damages otherwise to be awarded to an injured person, and in light of this Court's decisions to decline to review those decisions of the Court of Appeals.

Although Act 1 was not by its terms effective until July 1, 1985, it codified the common-law rule,[10] established by the Court of Appeals, that damages may not be reduced for failure to wear a seat belt with a "narrow exception"[11] permitting reduction of a damage award by not more than five percent for failure of a front-seat occupant to wear a seat belt.

The July 1, 1985, effective date of Act 1 was the date selected by the Legislature on which the narrow five-percent exception for front-seat occupants was to become effective, not the date on which a possible one hundred percent reduction of damages was to be reduced to no more than five percent. The lead opinion turns the July 1, 1985, effective date into a date on which relief from a possible one hundred percent reduction takes effect. That does not appear to be consonant with the legislative decision.

The Legislature, like bench and bar,[12] may con-

[10] The Legislature did not indeed codify the common-law rule that there is no duty to wear a seat belt, but on the contrary changed that rule effective July 1, 1985, to require front-seat occupants to wear seat belts and to permit evidence of violation of that requirement to be considered as evidence of negligence. The tort consequence or remedy for failure to wear a seat belt was limited, however, to a reduction of damages by not more than five percent.

Act 1, viewed in terms of the tort significance and consequence of its enactment, in effect codified the common-law rule of no reduction of damages for failure to wear a seat belt with the narrow five-percent exception.

[11] See n 29.

[12] The Legislature, like the litigants who relied on this Court's decisions not to review *Jolliff v American Advertising Distributors, Inc,* 49 Mich App 1; 211 NW2d 260 (1973), lv den 391 Mich 780 (1974), and *Buxton v Alexander,* 69 Mich App 507; 245 NW2d 111 (1976), lv

sider and rely on the decisions of the trial and appellate courts of this state when enacting new legislation. At times the common law is uncertain, and it may not be appropriate to attribute to the Legislature any particular reading of the common law. Where the common law is well-established and uncontradicted, however, and the Legislature essentially accepts the common-law rule,[13] a proper respect for legislative supremacy on substantive issues requires, in our opinion, that the judiciary ordinarily defer to the legislative decision to enter the field, abide by the legislative solution, and

den 399 Mich 827 (1977), could justifiably proceed on the assumption that the law of Michigan was as stated by the Court of Appeals. In *Gusler v Fairview Tubular Products,* 412 Mich 270; 315 NW2d 388 (1981), this Court disapproved the rule of *Jolliff,* and in *Putney v Haskins,* 414 Mich 181; 324 NW2d 729 (1982), this Court disapproved the rule of *Buxton.* In both cases, however, the change in law was prospective only; we stated that to do otherwise would be to defeat the justifiable expectations of litigants who legitimately regarded this Court's denial of leave to appeal as having significance.

In *Gusler,* this Court treated the interpretations of the workers' compensation statute by the director of the Bureau of Workers' Compensation, the Workers' Compensation Appeal Board, and the Court of Appeals, as controlling law so that "today's holding is not unlike the announcement of a new rule of law. Its application therefore should be treated accordingly." The Court continued: "In the interest of fairness we do not believe our holding should affect any disability compensation payments already made," but only "benefits due and not yet paid or to be awarded after the date of this opinion." *Gusler, supra,* p 298.

In *Tebo v Havlik,* 418 Mich 350; 343 NW2d 181 (1984), this Court considered the effect of its decision in *Putney* disapproving the rule of *Buxton.* It noted that *Buxton* had "remained as the uncontradicted interpretation of the name and retain provision." The Court addressed and rejected the argument that "any reliance by plaintiffs on *Buxton* was misplaced because it was a decision of the Court of Appeals, rather than one of this Court." The Court said that "[t]his argument fails to take into account the structure of the Michigan appellate system," and concluded that "[i]n light of the unquestioned status of *Buxton* at the time *Putney* was decided by this Court, it would be unjust to apply *Putney* retroactively to persons other than those before the Court in that case" and limited the applicability of *Putney* to cases where settlement agreements were entered into with the allegedly intoxicated person after the date of the decision in *Putney. Tebo, supra,* pp 362-364.

[13] See n 10.

refrain from further and belated refinement of the substantive law.

### III

On the authority[14] of *Kovacs v Chesapeake & O R Co, supra,* we would hold that, in light of the enactment of Act 1 in the context of the Court of Appeals having previously established as the common law of this state that the failure to use seat belts may not be considered to reduce the injured person's recovery for damages and this Court's denial of leave to review those decisions, it is not appropriate for this Court to change retroactively the common law of this state to provide that if a front- or rear-seat occupant fails to wear a seat belt, the damages otherwise to be awarded may be reduced one hundred percent for accidents that occurred before July 1, 1985, and, it would appear from the analysis of the lead opinion, one hundred percent before, on, and after that date for a rear-seat occupant.

In *Kovacs,* this Court granted leave to appeal to consider whether to increase from five percent to as much as twelve percent the interest rate stated in the standard jury instruction[15] concerning reduction to present value. After the cause was argued, but before decision, the Legislature enacted 1986 PA 178, providing that after a verdict had been rendered by a trier of fact in favor of a plaintiff, the court was obliged to enter a judgment for all future economic and all future noneconomic damages "reduced to gross present cash value," which latter term is defined as meaning "the total amount of future damages reduced to present

---

[14] There were three opinions in *Pittman v City of Taylor, supra* (see n 1). No opinion was signed by a majority of those participating. See *Negri v Slotkin,* 397 Mich 105; 244 NW2d 98 (1976).

[15] SJI2d 53.03.

value at a rate of 5% per year for each year in which those damages accrue . . . ."[16]

In *Kovacs,* this Court said that "[a]lthough the amendatory provision is not effective except as to cases filed on or after October 1, 1986,[17] we conclude, in light of the legislative action, that no further consideration should be given to the reduction to present-value issue."[18] The Court also said: "The Legislature thus has opted for the five percent rate."[19]

Thus, in *Kovacs,* this Court in effect said that because the Legislature had opted for the five-percent rate as to cases filed on or after October 1, 1986, it would not have been appropriate for this Court to consider changing the common-law rule for cases, such as *Kovacs,* that had been filed before that date.

The same view was expressed regarding another issue in *Kovacs.* The Chesapeake & Ohio Railway Company had asked the judge to charge the jury that any sum of money awarded the plaintiff is not subject to income tax. There were no controlling decisions of this Court or indeed of the Court of Appeals. It had not, however, this Court observed, "been the practice to charge the jury regarding income tax consequences."[20] Act 178 had not expressly dealt with the question, but had dealt with other related questions, requiring the reduction of a judgment for past economic damages by the amount of collateral source payments.[21] This Court said that "[u]nder the circumstance that the Legis-

[16] MCL 600.6306; MSA 27A.6306, added by 1986 PA 178.

[17] 1986 PA 178, § 3(3).

[18] *Kovacs, supra,* pp 649-650.

[19] *Id.,* p 649.

[20] *Id.,* p 650.

[21] MCL 600.6303, 600.6306; MSA 27A.6303, 27A.6306, added by 1986 PA 178.

lature has recently considered whether a judgment should be reduced by other benefits accruing to the plaintiff, we conclude that it would not be appropriate for this Court to address the question" whether the jury should be instructed "to reduce the amount that it might otherwise award the plaintiff by the amount that would be payable as income tax if the damages assessed by the jury were subject to income tax."[22]

The analysis in *Kovacs* suggests that in the instant case, the Legislature having spoken in Act 1, this Court should not speak to the question whether the damages to be awarded an injured person may be reduced because of a failure to use seat belts before July 1, 1985. There is no significant difference between *Kovacs* and the instant case. In both *Kovacs* and this case there was a well-established common-law rule announced and consistently adhered to by the appellate courts of this state: in *Kovacs,* that the interest rate for purposes of reduction to present value was five percent, and, in the instant case, that the amount of damages to be awarded to the injured person shall not be reduced for failure to use a seat belt.

In both *Kovacs* and the instant case, the Legislature essentially agreed with the common-law rule. The Legislature adopted, as to the issue considered in *Kovacs,* the judge-made rule of a five-percent rate, but provided a different procedure: the court rather than the jury reduces the award. As to the issue here being considered, the Legislature, by providing for a possible reduction of the damages to be awarded a front-seat occupant not exceeding five percent, adopted in the main (ninety-five percent) the judge-made rule that the damages to be awarded the injured person shall not be reduced for failure to use a seat belt.

[22] *Kovacs, supra,* p 650.

In *Kovacs,* this Court could have said, in accordance with the analysis of the lead opinion in the instant case, that Act 178 did not preclude this Court from changing the common law concerning cases filed before October 1, 1986. Rather, the Court in *Kovacs* said in effect that it would not, in light of the legislative decision, be appropriate for this Court to change the common law after the Legislature has spoken and essentially adopted the common-law rule.

IV

We have considered the possible application of *Hyde v Univ of Michigan Bd of Regents,* 426 Mich 223; 393 NW2d 847 (1986), where the Legislature, in 1986 PA 175, adopted this Court's construction of the governmental tort liability act, but amended the act for cases arising, after the effective date of the amendment, out of the operation of a hospital.[23]

---

[23] (f) "Governmental function" is an activity which is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law. [MCL 691.1401(f); MSA 3.996(101)(f).]

(4) This act does not grant immunity to a governmental agency with respect to the ownership or operation of a hospital or county medical care facility or to the agents or employees of such hospital or county medical care facility. As used in this subsection:

(a) "County medical care facility" means that term as defined in section 20104 of the public health code, Act No. 368 of the Public Acts of 1978, being section 333.20104 of the Michigan Compiled Laws.

(b) "Hospital" means a facility offering inpatient, overnight care, and services for observation, diagnosis, and active treatment of an individual with a medical, surgical, obstetric, chronic, or rehabilitative condition requiring the daily direction or supervision of a physician. The term does not include a hospital owned or operated by the department of mental health or a hospital operated by the department of corrections. [MCL 691.1407(4); MSA 3.996(107)(4).]

In *Hyde,* this Court said[24] that the Legislature, in enacting 1986 PA 175, "codified" the "broad immunity granted by *Ross* [*v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984)]," with a "narrow exception" for a public general hospital or county medical facility. So, too, here, the Legislature in effect codified over ninety-five percent of the no-reduction-of-damages rule promulgated by the Court of Appeals in *Roman-kewiz, Selmo, Placek, DeGraaf,* and *Schmitzer,* with a narrow exception, permitting reduction not exceeding five percent of damages for front-seat occupants.

This Court had ruled in *Parker v Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), that the operation of a general hospital was not a "governmental function" within the meaning of the governmental tort liability act. Subsequently, in *Ross,* this Court defined the term "governmental function" as "an activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law."[25]

In *Hyde,* this Court considered whether *Ross* impliedly overruled "that portion of *Parker* which held that the day-to-day operation of a public general hospital is not a governmental function."[26] The Court held that "to the extent that the diagnosis, treatment, and care of patients at a public general hospital or medical facility are activities which are expressly or impliedly mandated or authorized by constitution, statute, or other law, the hospital or facility is entitled to immunity from tort liability," and that "[t]o the extent that *Parker* held that such activities do not constitute

---

[24] See text accompanying n 29.

[25] *Ross, supra,* p 620.

[26] *Hyde, supra,* p 230.

the exercise or discharge of a governmental function, it was impliedly overruled by *Ross.*"[27]

After *Ross* was decided, Act 175 was enacted, effective July 1, 1986, providing that the governmental tort liability act does not grant immunity with respect to the ownership or operation of a hospital or county medical care facility.[28]

This Court considered in *Hyde* the possible application of the 1986 amendatory legislation on the question whether *Ross* impliedly overruled *Parker* and said:

> We suggested in *Ross* that plaintiffs' arguments would be better addressed to the Legislature. *Id.,* p 621. In response to *Ross,* 1986 PA 175 was enacted, effective July 1, 1986. The *Ross* definition of "governmental function" is codified in § 1(f). However, § 7(4) specifically allows tort liability to be imposed on a governmental agency which owns or operates a public general hospital or county medical facility. By adopting this narrow exception to the broad immunity granted by *Ross* and codified by 1986 PA 175, it is clear that the Legislature believed that *Ross* had impliedly overruled *Parker.*[29]

Thus, although *Parker* was not explicitly overruled until *Hyde* was decided, after the enactment of Act 175, this Court, in so explicitly overruling *Parker,* declared that *Parker* had already been "impliedly overruled by *Ross,*" and that it was "clear that the Legislature believed that *Ross* had impliedly overruled *Parker.*"

In *Hyde,* this Court's decision in *Ross* preceded the legislative amendment of the statute. This is a different case. Here, the Legislature has already acted before this Court, in the instant case, changes the prior common-law rule.

[27] *Id.,* p 231.
[28] See n 23.
[29] *Id.,* pp 245-246.

In the instant case, the Legislature, when it enacted Act 1, had no reason to suppose that the common-law no-reduction-of-damages rule that had been stated and restated in *Romankewiz, Selmo, Placek, DeGraaf,* and *Schmitzer,* might in effect be overruled by this Court two years after the enactment of Act 1. It is again noteworthy that this Court had declined to review those decisions of the Court of Appeals where further review by this Court had been sought.

Under the Court's analysis in *Hyde,* this Court did not change the rule of *Parker* after the Legislature had adopted that rule because *Parker* had already been impliedly overruled by *Ross* before the Legislature acted, and the Legislature, clearly believing that *Ross* had impliedly overruled *Parker,* accepted that implied overruling by making Act 175 operative only from and after a future date, July 1, 1986. It cannot be said here that the Legislature, in making Act 1 effective July 1, 1985, accepted a change in the prior common-law rule that does not occur until the opinions in the instant case are announced, over two years after the Legislature enacted Act 1.[30]

---

[30] *Hyde* also dealt with the question whether a change in the common law should be given full or limited retroactive or prospective effect. In holding that *Ross* should be given "limited retroactive effect," this Court said that *Ross* did not overrule "clear and uncontradicted case law." Rather, "[b]eginning with *Parker,* no single definition had been adopted by a majority of this Court. In addition, the case law in general was 'confused [and] often irreconcilable.' *Ross,* 420 Mich 596. Given the uncertainty of the law in this area, the bench and bar should have realized that some of our prior decisions, including *Parker,* might not survive after *Ross." Hyde, supra,* p 240.

The Court continued:

> [T]he general rule is that judicial decisions are to be given complete retroactive effect. We often have limited the application of decisions which have overruled prior law or reconstrued statutes. *Tebo,* 418 Mich 360-361. Complete prospective application has generally been limited to decisions which overrule clear and uncontradicted case law. *Id.,* pp 361-363.

## ARCHER, J., concurred with LEVIN, J.

We believe that *Ross* should be given the same limited retroactive effect that *Parker* was given by *Murray* [v *Beyer Memorial Hosp,* 409 Mich 217; 293 NW2d 341 (1980)]. We therefore hold that the rules articulated in *Ross* should be applied to all cases commenced after the date our opinion was issued (January 22, 1985), and to those cases pending either in trial or appellate courts on that date which properly raised and preserved a governmental immunity issue. [*Hyde, supra,* pp 240-241.]

It cannot be said that there was any "uncertainty of the law in this area" or that the decisions of the Court of Appeals were "confused [and] irreconcilable." They were consistent and in full agreement, one with the other. See *Parker v Port Huron Hosp,* 361 Mich 1; 105 NW2d 1 (1960).